MORAN BROS., INC., Appellant,

v.

W. R. YINGER, Trustee, Admiral Oils, Inc., an Oklahoma Corporation, Appellee.

No. 7297.

United States Court of Appeals
Tenth Circuit.

Oct. 22, 1963.

**700**

⟨key⟩303(4)

Robert L. Cox, Oklahoma City, Okl. (James R. Eagleton, Oklahoma City, Okl., was with him on the brief), for appellant.

William D. Curlee of Lytle, Soule & Emery, Oklahoma City, Okl., for appellee.

Before PICKETT, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

This appeal is from an order of the court below, entered in a Chapter X Corporate Reorganization (11 U.S.C.A. § 501 et seq.) proceeding, denying a creditor's claim as a secured claim.

Appellant, Moran Bros., Inc., on March 5, 1962, entered into a written contract with Admiral Oils, Inc., providing for the drilling by it of an oil well for Admiral. The payment provisions of the contract were not met by Admiral. On March 22, Moran Bros. accepted a check from Admiral in the amount of $20,000, drawn on a Texas bank and post-dated to May 1, 1962. On that date the check was presented to the drawee bank by Dick Moran and payment was refused because of insufficient funds. Moran then discussed the matter by telephone with one Berry, a representative of Admiral. By this conversation, appellant contends, an oral assignment was made by Admiral to Moran Bros. of the funds in the Texas bank account. On May 2, 1962, Admiral made two deposits which resulted in a bank balance of $21,611.82. After the deposits, the bank again refused to honor the $20,000 check upon instructions from Admiral. On May 7, 1962, Moran Bros. commenced an action in the state court of Texas to recover the amount due it under the drilling contract and garnisheed the Admiral bank account in question.

On June 27, 1962, Admiral instituted this Chapter X Corporate Reorganization proceeding in the United States District Court for the Western District of Oklahoma and the state court action brought by Moran Bros. was stayed. Moran Bros. thereafter filed a claim in the Chapter X proceeding for the amount due under the drilling contract and alleged that the claim was secured by virtue of "an equitable lien upon, oral assignment of and right as a trust fund for their benefit" in the funds on deposit in the Texas bank. Appellee, Yinger, as Trustee in the Chapter X case, denied the existence of an oral assignment but affirmatively alleged that if, in fact, there was an oral assignment, it constituted a voidable preference under § 60 of the Bankruptcy Act, 11 U.S.C.A. § 96.

The lower court found that the evidence was wholly insufficient to establish an oral assignment of the bank account under its interpretation of Texas law and

that, assuming there was such an assignment, the same constituted a voidable preference under § 60 of the Act.

■ The parties agree that Texas law is controlling on the question of whether there was an oral assignment of the funds on deposit in Admiral's account. They also agree that the substantive law of Texas recognizes an oral assignment of a bank account under certain circumstances. The lower court, in applying the law of that state, said: "It is the opinion of this Court and the Court finds that under the law of the State of Texas, where the oral assignment is alleged to have been made, that the drawer, payee and drawee must agree that a particular check in being will be paid out of an account in being." Appellant contends that this is an incorrect statement because the law of Texas does not require an agreement on the part of the drawee as a condition precedent to an oral assignment for it to be valid as between the drawer and payee of the check. We agree. The Texas cases clearly hold that while a check does not, of itself, ordinarily operate as an assignment of any part of the funds of the drawer on deposit in the drawee bank, such an assignment may be created by an agreement or understanding between the drawer and payee of the check, in addition to the check, that such shall be the effect of the transaction. Kilgore Nat. Bank v. Moore Bros. Lumber Co., Tex.Civ.App., 74 S.W.2d 141; rev'd on other grounds, Tex.Com.App., 102 S.W.2d 200; Green v. Brown, Tex.Civ.App., 22 S.W.2d 701; Slaughter v. First Nat. Bank of Lamesa, Tex.Civ.App., 18 S.W.2d 754; Hatley v. West Texas Nat. Bank, Tex.Com.App., 284 S.W. 540. And, "It is not necessary that the check itself should have ordered payment out a particular fund. The assignment may be written or oral and may be shown by circumstances, or by any character of legitimate evidence. * * *" Hatley v. West Texas Nat. Bank, supra, 284 S.W. at 542.

■ It is therefore apparent that, under Texas law, there may be an oral assignment of funds in a bank account by virtue of an agreement to that effect between the drawer and payee of the check and it is not essential for the drawee bank to be a party to such agreement. The lower court misinterpreted the law in this respect and, accordingly, the case must be remanded to that court for a redetermination of the question in the light of the correct law to be applied and the facts of record.

■■ The essential elements of a voidable preference under § 60 are as follows: (1) There must be a transfer of property owned by the debtor; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made or suffered by the debtor while insolvent; (5) within four months of bankruptcy; (6) the effect of which will enable the creditor to obtain a greater percentage of his debt than other creditors of the same class; and (7) the creditor receiving the transfer or to be benefited thereby, or his agent, must have reasonable cause at the time the transfer is made to believe that the debtor is insolvent. The absence of any one of these elements negates the existence of a voidable preference. 3 Collier on Bankruptcy (14th Ed.), § 60.36, p. 874; 4 Remington on Bankruptcy, § 1657, p. 197; 9 Am. Jur.2d, Bankruptcy, § 1057, p. 785. The burden of proving each and every one of these elements, by a preponderance of the evidence, is upon the trustee. Inter-State National Bank of Kansas City v. Luther, 10 Cir., 221 F.2d 382, cert. dismissed, 350 U.S. 944, 76 S.Ct. 297, 100 L.Ed. 823; Vance v. Dugan, 10 Cir., 187 F.2d 605; Aulick v. Largent, 4 Cir., 295 F.2d 41; 9 Am.Jur.2d, Bankruptcy, § 1185, p. 880.

■ Appellant admits that the Trustee has met the burden of proof on elements (1), (2) and (5), but asserts that the evidence is wholly insufficient to prove the remaining four elements. Because of our decision, we need only discuss the last element, namely, whether the creditor, Moran Bros., had reasonable cause at the time the transfer was made to believe that the debtor, Admiral, was insolvent. The court below found

that Moran Bros. had reasonable cause to believe that Admiral was insolvent at the time the alleged assignment was made. That finding is, of course, binding upon this court unless it is clearly erroneous. Washington v. Houston Lumber Company, 10 Cir., 310 F.2d 881; Potucek v. Cordeleria Lourdes, 10 Cir., 310 F.2d 527, cert. denied, 372 U.S. 930, 83 S.Ct. 875, 9 L.Ed.2d 734. And, "* * * A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746.

 In determining the issue of "reasonable cause", every case must be viewed and interpreted in the light of its own facts, circumstances and surroundings. McDougal v. Central Union Conference Ass'n, 10 Cir., 110 F.2d 939. However, there are certain fundamental principles that must be applied in making such a determination. A mere apprehension or suspicion of insolvency does not amount to reasonable cause; but it is sufficient if the creditor has knowledge or notice of facts and circumstances which would incite a person of reasonable prudence under similar conditions to make an inquiry and, if such an inquiry would lead to the development of facts essential to the knowledge of the situation, the creditor is chargeable with such knowledge. Grant v. First National Bank, 97 U.S. 80, 24 L.Ed. 971; Inter-State National Bank of Kansas City v. Luther, supra. The temporary failure of a debtor to discharge his obligations promptly when they fall due is not in itself sufficient to show reasonable cause. McDougal v. Central Union Conference Ass'n, supra. The fact that a creditor may feel anxious about his claim and have a strong desire to obtain security for it or have it paid is not sufficient just as the obtaining of additional security is not sufficient. Everett v. Warfield Mining Co., 4 Cir., 37 F.2d 328. And, finally, as a corollary to the rule

imposing the burden of proof upon the trustee, there is a presumption of good faith on the part of a creditor who receives a payment of his debt which must be overcome by evidence of reasonable cause to believe that the debtor is insolvent. Canright v. General Finance Corporation, 7 Cir., 123 F.2d 98; Republic National Bank of Dallas v. Vial, 5 Cir., 232 F.2d 785.

The evidence relied upon in this case to show reasonable cause may be briefly stated. At the time the drilling contract was entered into, Moran Bros. required an escrow deposit of $10,000 because it had experienced difficulty in collecting from Admiral for work performed on a previous occasion. The escrow depository was changed at Admiral's request so as to avoid the payment of a $25 escrow fee. Admiral failed to meet its obligation of making the escrow deposit and, after advising Moran Bros. that funds were not available to be deposited, gave Moran Bros. a post-dated check in the amount of $20,000 in lieu of the escrow deposit. Prior to obtaining this check, the credit manager of Moran Bros. expressed concern that Admiral would be unable to complete payment and he wanted some funds at that time. When the contract depth of the well was reached on April 1, Moran Bros. demanded payment of the post-dated check and refused to proceed with the drilling until Admiral made a payment of $5,000. And, finally the $20,000 post-dated check was refused because of insufficient funds when it was presented for payment.

 We do not believe that this evidence is sufficient to support the lower court's finding of reasonable cause on the part of Moran Bros. to believe that its debtor, Admiral, was insolvent at the time the alleged oral assignment was made. The most that can be said for the evidence when viewed in the light of the foregoing principles of law is that it tends to give rise to an apprehension or suspicion of insolvency and, as we have seen, apprehension or suspicion does not amount to reasonable cause. Thus, while there is some evidence tending to sup-

port the court's finding, we are, nevertheless, "on the entire evidence left with the definite and firm conviction that a mistake has been committed." It therefore follows that the finding of fact in question is clearly erroneous.

The portion of the judgment below pertaining to the voidable preference is reversed, and the portion of the judgment pertaining to the oral assignment is vacated and the case is remanded to enable the trial court to make findings of fact and conclusions of law upon this issue in accord with the views expressed herein.