William H. **BROWN**, Trustee of the Estate of Star Electric Supply, Inc., a Corporation, Bankrupt,

v.

**TRU–LITE, INC.**
Civ. A. No. 74–713.

United States District Court,
W. D. Louisiana,
Monroe Division.
Aug. 26, 1975.

John C. Anderson, Newman, Duggins, Drolla & Gamble, Baton Rouge, La., for the Trustee.

William G. Kelly, Jr., Davenport, Files & Kelly, Monroe, La., for defendant.

## OPINION AND ORDER

DAWKINS, Senior District Judge.

By complaint filed July 24, 1974, plaintiff William H. Brown, Trustee of the Estate of Star Electric Supply, Incorporated (Star Electric), a bankrupt corporation, initiated this plenary action, praying for recovery of $5,193.22, a sum he alleges was transferred to defendant, Tru-Lite, Incorporated (Tru-Lite), under factual circumstances constituting a voidable preference under § 60 of the Bankruptcy Act [11 U.S.C.A. § 96].

On April 3, 1975, plaintiff filed a motion for summary judgment, By cross motion for summary judgment, filed April 16, 1975, defendant seeks dismissal of plaintiff's action, praying in the alternative for trial by jury.

Hearing was had on June 13, 1975.

The pleadings, depositions, admissions, and stipulations of counsel, together with affidavits on file in the record, show that there is no genuine issue as to the following material facts:

From September, 1970, through December, 1970, defendant sold to Star Electric certain merchandise on open account for a total price of $8,948.63. In July, 1971, defendant sued for collection of the account in the Nineteenth Judicial District Court of Louisiana, East Baton Rouge Parish.

Tru-Lite recovered judgment for the total price of the merchandise, together with legal interest and Court costs, on November 13, 1972.

Acting under authority of a writ of *fieri facias* directed to him by the State Court, the Sheriff of East Baton Rouge Parish seized the inventory of Star Electric at its place of business in Baton Rouge on December 4, 1972. Pursuant to Louisiana law, the property was sold to the highest bidder at public auction on or about January 10, 1973, for a total price of $8,678.25.

After deducting Court costs, expenses, and commissions, the Sheriff remitted the sum of $5,193.22 to Tru-Lite on or about January 15, 1973.

On February 1, 1973, a petition was filed against Star Electric placing it in involuntary bankruptcy.

Section 60(a)(1) provides:

"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Section 60(a)(2) states:

"For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. . . ."

Section 60(b) provides authority for the Trustee to recover any voidable preference under this section:

"Any such preference may be avoided by the trustee if the creditor receiving

it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. . . . "

In his memorandum in support of his motion for summary judgment, the Trustee argues that the "transfer" expressed in § 60 of the Bankruptcy Act took place upon remittance to defendant of the proceeds of the Sheriff's Sale. He further urges that *at that time* defendant had reasonable cause to believe that the judgment debtor was insolvent, arguing that seizure of the entire inventory of a debtor corporation within four months of bankruptcy should create a legal presumption of reasonable cause to believe in the bankrupt's insolvency. Alternatively, the Trustee avers that a seizing creditor is under a duty to investigate the financial condition of his judgment debtor, thereby binding the seizing creditor to knowledge of facts which an investigation would have disclosed.

We disagree.

The Trustee cites 4 *Collier on Bankruptcy,* § 67.11, pp. 136 through 137, in support of his proposition that distribution of the proceeds of the Sheriff's Sale is a "transfer" under § 60 of the Bankruptcy Act.[1] While we recognize *Collier's* expertise, we note that the quoted excerpt from the text and the case there cited interpret § 60 as amended in 1910, when the statute differed substantially from its present context.

We feel, instead, that a proper interpretation of the statute as it reads today is well stated in *Bass v. Stodd,* 357 F.2d 458 (9th Cir., 1966). There the Court said:

" 'In the absence of any controlling federal statute, a creditor or bona fide purchaser could acquire rights in the property transferred by the debtor, only by virtue of a state law. And hence § 60, sub. a's "apparent command is to test the effectiveness of a transfer, as against the trustee, by the standards which applicable state law would enforce against a good-faith purchaser." *Corn Exchange Nat. Bank & Trust Co v. Klauder,* 318 U.S. 434, 436–437, 63 S.Ct. 679, 87 L.Ed. 884. See also *Benedict v. Ratner,* 268 U.S. 353, 359, 45 S.Ct. 566, 69 L.Ed. 991, and cases cited. Section 60a in this respect, as do numerous other federal statutes, see *Davies Warehouse Co. v. Bowles,* 321 U.S. 144, 155, 156, 64 S.Ct. 474, 88 L.Ed. 635 and note 20, and cases cited, thus adopts state law as the rule of decision. *The state standards which control the effectiveness of a transfer likewise determine the precise time when a transfer is deemed to have been made or perfected.' McKenzie v. Irving Trust Co.,* supra, 323 U.S. 365 at 370, 65 S.Ct. 405 at 408, 89 L.Ed. 305.'' (Emphasis ours.)

We turn accordingly to the law of Louisiana to determine whether 1) seizure of the judgment debtor's property, or 2) distribution of proceeds from the

---

1. The pertinent portion of that text reads: ". . . if the garnishee lien was obtained when the debtor was insolvent and the other elements of a preferential transfer existed . . . but the transfer was not voidable . . . does subsequent acceptance of payment in satisfaction of the lien, at a time when the creditor has reasonable cause to believe his debtor insolvent, constitute a preference? The correct answer is believed to be 'yes.' Here it will be noted that the garnishee lien is not voidable under § 60(b), but is voidable under § 67(a) since the creditor's knowledge of insolvency is immaterial. . . . Acceptance of payment is a transfer by

the debtor of his property within the terms of §§ 60 and 1(30), . . . and since it is to obtain satisfaction of a lien voidable under § 67(a), the payment depletes the estate, and, the other elements of a voidable preference may then be present, the creditor-transferee should be compelled to disgorge. See *Adler v. Greenfield,* 83 F.2d 955 (2d Cir., 1936) . . . . ."

We believe that assertion by *Collier* fails to heed the clear import of § 60(a)(2), which prescribes the definition of "transfer" within the framework of § 60 of the Bankruptcy Act.

Sheriff's Sale was the precise time at which the transfer became " . . . so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee."

Louisiana Code of Civil Procedure, article 2292, provides:

"The seizing creditor, by the mere act of seizure, acquires a privilege on the property seized, which entitles him to a preference over ordinary creditors.

"When several seizures of the same property are made by ordinary creditors, the seizing creditors acquire a privilege and are entitled to a preference among themselves according to the order of their seizures."

■ Since it is clear that seizure perfects the rights of the seizing creditor as against subsequently arising liens under Louisiana law, we hold that here the "transfer" contemplated by § 60 of the Bankruptcy Act occurred upon the Sheriff's seizure of the judgment debtor's property.

■ We now turn to the issue of summary judgment. The mere filing of cross motions for summary judgment does not empower us to grant a summary judgment unless one moving party is entitled to judgment as a matter of law on the basis of material facts not in dispute. Rule 56(c) F.R.Civ.P.;[2] *Bricklayers, Masons, and Plasterers Local No. 15, et al v. Stuart Plastering Company, Inc., et al,* 512 F.2d 1017 (5th Cir. 1975).

■ The essential elements of proof under § 60 are:

(1) There must be a transfer of property owned by the debtor;

(2) To or for the benefit of a creditor;

(3) For or on account of an antecedent debt;

(4) Made or suffered by the debtor while insolvent;

(5) Within four months of bankruptcy;

(6) The effect of which will enable the creditor to obtain a greater percentage of his debt than other creditors of the same class; and

(7) The creditor receiving the transfer or to be benefited thereby, or his agent, must have reasonable cause at the time the transfer is made to believe that the debtor is insolvent.

11 U.S.C. § 96(a)(1), and (b); *Bumb v. Valley Electric Company,* 419 F.2d 107 (9th Cir., 1969), and cases there cited.

The absence of any one of these requisite elements negates existence of a voidable preference. *Bumb v. Valley Electric Co., supra; Gentry v. Twin City Glass, Inc.,* 358 F.Supp. 1022 (W. D.La., 1973). It follows, therefore, that a genuine dispute as to any material fact relating to the requisite elements of proof negates granting summary judgment. Rule 56(c), F.R.Civ.Proc.

■ We find from the record that there does exist a genuine dispute as to whether Tru-Lite had reasonable cause to believe in the insolvency of Star Electric at the time of seizure under the writ of *fieri facias.*

■ The Trustee's argument that seizure of Star Electric's inventory should create a presumption that Tru-Lite had reasonable cause to believe the debtor to be insolvent is without merit. The proper rule of law is that every case must be decided "in light of its own facts, circumstances and surroundings." *McDougal v. Central Union Conference Association,* 110 F.2d 939 (10th Cir., 1940); *Holahan v. Gore,* 278 F.Supp. 899

---

2. Rule 56(c) provides in part:
" . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

(E.D.La., 1968), and authorities therein cited.

 Nor does mere seizure, without more, create a duty upon the creditor to investigate the financial status of his judgment debtor at the time seizure is made.

 Simply put, the single factual issue in dispute is this: What facts were known to the employees and/or agents of Tru-Lite at the time of the "transfer" (seizure)? Only when we judicially ascertain the material facts known to Tru-Lite's agents or employees *at that time* can we rule, as a matter of law, whether defendant had reasonable cause to believe in the debtor's insolvency. *Clower v. First State Bank of San Diego*, 343 F.2d 808 (5th Cir., 1965); 3 *Collier on Bankruptcy* (14th Ed.), § 60.-53, and numerous authorities cited therein; *Mayo v. Pioneer Bank & Trust Co.*, 297 F.2d 392 (5th Cir., 1961).

Accordingly, the cross motions for summary judgment are denied.

Under the authority vested in us by Rule 56(d), F.R.Civ.Proc.,[3] we find the following facts to be without substantial controversy: On December 4, 1972 (within four months of bankruptcy), a transfer of property from Star Electric to Tru-Lite took place by virtue of a seizure under writ of *fieri facias* in East Baton Rouge Parish, Louisiana, at a time when the debtor was insolvent.[4] This transfer inured to the benefit of Tru-Lite, enabling that corporation to obtain a greater percentage of its debt than other creditors of the same class.

 We order a jury trial on the sole issue of whether Tru-Lite had reasonable cause to believe in the insolvency of Star on December 4, 1972.[5]

On trial of that issue, the facts specified above shall be deemed established, and the trial shall be conducted accordingly.

---

3. "(d) CASE NOT FULLY ADJUDICATED ON MOTION. If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

4. Schedules filed in the United States District Court for the Middle District of Louisiana show that Star Electric was insolvent within the meaning of the Bankruptcy Act on December 4, 1972.

5. We propose, at trial herein, to submit this issue to the jury, according to Rule 49, F. R.Civ.Proc.